UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GE HEALTHCARE FINANCIAL SERVICES,

    Plaintiff,

v.

Case number 05-71304
Honorable Julian Abele Cook, Jr.

CARDIOLOGY AND VASCULAR ASSOCIATES,

    Defendant/Third-Party Plaintiff,

v.

GENERAL ELECTRIC COMPANY

    Third-Party Defendant.

ORDER

Before the Court are two motions, both of which have been filed by the Third-Party Defendant, General Electric Company ("GE"). In proffering its first motion, GE seeks to have paragraphs 37-38 and 77-78, as well as parts A, B( I), B(iii), B(iv), and B(v) of the First Amended Third-Party Complaint by the Defendant, Cardiology and Vascular Associates, P.C. ("CAVA"), stricken. In its second motion, GE, in relying upon Fed.R.Civ. P. 12(b)(6), seeks to obtain a dismissal of counts III (implied warranty) and IV (fraud) of the First Amended Third-Party Complaint. For reasons that have been set forth below, the Court (1) grants GE's Motion to Dismiss counts III and IV; and (2) grants in part and denies in part GE's Motion to Strike.

I.

On March 30, 2001, CAVA entered into a contractual agreement with Imatron[1] (GE's predecessor) to purchase an EBT Scanner[2] for $1,895,535.  On September 14, 2001, CAVA financed its acquisition of this medical equipment through a lease agreement[3] with the Plaintiff, General Electric HealthCare Financial Services ("GEHFS").[4]  On April 18, 2002, an EBT Scanner was delivered to, and accepted by, CAVA.

Beginning in May 2002, CAVA asserts that it experienced a series of problems with the operation of the EBT Scanner.[5]  As a result of these claimed operational difficulties, CAVA ceased

---

[1] According to GE, it acquired Imatron in December 2001. "Thereafter, Imatron existed as a separate corporate subsidiary of GE (doing business as "GE Imatron") until June 2003, when it was merged into GE's healthcare division."  GE's Br. Supp. Mot. Dismiss at 7 (citations omitted).

[2] "The EBT [Scanner is] a diagnostic tool (similar to an x-ray) which used electron beams to rapidly take scans of the human body, so that organs, such as the human heart, would be rendered 'virtually motionless.'  This allowed cardiologists to detect early atherosclerotic plaque formation and obstructions in coronary artery and vascular blood flow, one of the major causes of heart attacks." GE's Br. Supp. Mot. Dismiss at 6.

[3] The parties entitled their contractual relationship as a "Master Lease Agreement and Equipment Schedule."

[4] The Plaintiff, General Electric HealthCare Financial Services ("GEHFS"), became a subsidiary of GE in June 2002. Thus, for the purpose of this lawsuit, GEHFS and Imatron will be viewed as separate corporate entities.

[5] According to CAVA, "[p]roblems with the EBT . . . manifested themselves in numerous forms, including, but not limited to, an inoperable table, work station imaging failures, image transfer failures, image printing failures, digital integration noncompatabilities, streaky images, software lockups, nonfunctioning lasers, replacement of monitor and electron gun, power outages, and system instability." CAVA's Br. Opp'n Mot. Dismiss at 8.
CAVA also asserts that GE, through Imatron, made material misrepresentations about the capabilities of the EBT Scanner. In particular, CAVA contends that, notwithstanding Imatron's proclamations about the performance capabilities of this medical equipment (e.g., the EBT Scanner could be utilized on approximately 30-40 patients a day), it was unable to obtain more than 10 patient scans per day. *Id.*  Furthermore, CAVA submits that Imatron made material misrepresentations which clearly suggested that the images produced by the EBT Scanner could be read by any cardiologist who had been trained in cardiovascular angiography. Nonetheless, CAVA asserts the workstation, which accompanied the EBT Scanner, was unable to produce an image that could be read by its cardiologists.   In turn, CAVA contends that this

its monthly lease payments to GEHFS in September 2004. Believing that CAVA had violated the terms of its contractual obligations, GEHFS initiated this lawsuit on April 4, 2005 in an effort to recover the balance of the monies that were due and owing under the lease agreement. In response, CAVA filed a Third-Party Complaint against GE in May 2005 which was subsequently amended in October 2005. In its First Amended Third Party Complaint, CAVA charged GE with (1) violations of express warranties under the Uniform Commercial Code (UCC) and the common law, respectively, (2) fraud, and (3) a breach of an implied warranty as standardized by the UCC. In pursuit of these claims against GE, CAVA seeks to obtain (1) the difference in value between the EBT Scanner as originally represented by Imatron and the value of the EBT Scanner that was actually delivered; and (2) the consequential damages (including the costs for the repair and maintenance of the machine, the fees paid to cardiologists and other professionals, and the loss of profits which resulted from its inability to use the EBT Scanner in a manner as represented).

The Court will now turn to the issues that have been raised by GE in connection with its two motions. However, since the filing of these dispositive pleadings, the parties have agreed to narrow the issues in dispute, leaving only GE's motions to dismiss count IV (fraud) and to strike paragraphs 37-38 and 77-78 to be resolved by the Court.[6]

II.

---

failing caused it to send the EBT images to another cardiologist who was familiar with reading EBT scans. *Id.* at 8-9. CAVA maintains that this "outsourcing" procedure cost it over $100,000. Finally, CAVA claims that Imatron, despite having made promises that it would promote the advantages of the EBT technology to the general public, including appropriate professional organizations and persons within the field of medicine, failed to fulfill its obligations.

[6] In its response brief, CAVA has agreed to the dismissal of Count III. *See* CAVA's Br. at 5 n1. Furthermore, during the proceeding before the Court, the parties mutually agreed that CAVA will amend its Third-Party Complaint in order to properly plead parts A, B( i), B(iii), B(iv), and B(v), under the "essential purpose" doctrine, as provided in Mich.Comp.Laws §440.2953.

Under Federal Rule of Civil Procedure 12(b)(6), a party may test whether a cause of action has been adequately pled in the Complaint. If such a dispositive request is made to the Court, the allegations by the opposing party (in this case, CAVA) must be construed liberally in its favor and, for the purposes of the motion, accepted as being true. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). At the same time, any legal conclusions or unwarranted factual inferences should not be assumed. *See Morgan*, 829 F.2d at 12; *Westlake*, 537 F.2d at 858.

Significantly, the federal courts within the Sixth Circuit have been encouraged not to dismiss a pleading merely because it does not set forth all of the elements which gave rise to a legal basis of recovery or because the aggrieved party may have misconceived the proper theory, if relief can be granted under any plausible theory. *See Myers v. United States*, 636 F.2d 166, 169 (6th Cir. 1981). Instead, a dismissal should be permitted only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45 (1957)); *In re DeLorean Motor Co.*: *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993).

In Count IV of its First Amended Third Party Complaint, CAVA contends that it had been fraudulently induced by GE, through Imatron, to purchase the EBT Scanner. On this issue, CAVA's claims for damages are based on the theory that the EBT Scanner did not perform as represented, for which it is only seeking economic damages.

Under the economic loss rule, "[w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone,

for he has suffered only 'economic' losses."[7]  *Huron Tool & Eng'g Co. v. Precision Consulting Servs. Inc.*, 532 N.W.2d 541, 542 (Mich. App. 1995) (internal quotation marks and citation omitted).  In Michigan, an exception to the economic loss rule for fraudulent inducement claims has been carved out, in that "[f]raud in the inducement presents a special situation where parties to a contract appear to negotiate freely . . . but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior." *Huron Tool & Eng'g Co.*, 532 N.W.2d at 545.   Thus, in order to establish the "fraudulent inducement" exception, an aggrieved party must show that the alleged misrepresentation is "extraneous to the contract." *Id.* at 545-46.

A misrepresentation claim is not "extraneous to the contract" if (1) "the misrepresentations alleged by plaintiff relate solely to the quality and characteristics of defendant's [product]," *Citizen Ins. Co. v. Osmose Wood Preserving, Inc.*, 585 N.W.2d 314, 317 (Mich. App. 1998); or (2) the alleged misrepresentations "did not cause harm to the [plaintiff] distinct from those caused by the breach of contract[.]" *Huron Tool & Eng'g Co.*, 532 N.W.2d at 545.

As evidence of its claims, CAVA points to five alleged misrepresentations by Imatron to support its fraudulent inducement argument:

\*	The EBT was state of the art equipment that could be utilized on the standard 30-40 patients a day to enable CAVA to detect cardiovascular conditions, non-invasively and without the risk of standard angiography (FATPC ¶¶ 7-9).[8]

\*	[T]he images produced by the EBT could be read by any cardiologist trained in cardiovascular angiography. (FATPC ¶36);

---

[7] The purpose of the economic loss rule is to prevent buyers from using tort claims to avoid the limitations and rules which have been established by the UCC and contract law. *See Neibarger v. Universal Coops., Inc.*, 486 N.W. 2d 612, 615-17 (Mich. 1992).

[8] "FATPC" refers to CAVA's First Amended Third Party Complaint.

>   \*   Imatron *would* promote the EBT technology to professional groups, industry associations and the public to increase the public and professional awareness of the EBT and to expand its use and acceptance in the medical community (FATPC ¶36);
>
>   \*   [T]hat EBT owners and future buyers could rest assured that the tools and support they depend upon relative to the EBT *would* continue to be available and only improve (FATPC ¶10);[9] and
>
>   \*   [T]hat Imatron [*would*] diligently work[] with the Centers for Medicare and Medicaid Services (CMS) to obtain new reimbursement codes for the EBT scans that would provide for a higher reimbursement than the codes used for standard CT scans. (FATPC ¶35).

CAVA's Opp'n Br. Mot. Dismiss at 12 (emphasis added).

Even when construing CAVA's allegations liberally and accepting them as being correct, it is clear that these claims of fraud do not fall under the fraudulent inducement exception to the economic loss rule. As an example, the first two alleged misrepresentations clearly relate to "the quality and characteristics" of the EBT Scanner. Thus, the Court concludes that these allegations of misrepresentations are not covered by the fraudulent inducement exception, and will be removed from further consideration by the Court. *See Citizen Ins. Co.*, 585 N.W.2d at 317.

The remaining three alleged misrepresentations must be dismissed as well because each of them relate to claims of future promises. Under Michigan law, "an action for fraudulent misrepresentation must be predicated upon a settlement relating to a past or an existing fact. Future promises are contractual and do not constitute fraud." *Cook v. Little Caesar Enterprises, Inc.*, 972 F.Supp 400, 410 (E.D. Mich. 1997) (internal quotation marks omitted) (citing *Hi-Way v. Int'l Harvester*, 398 Mich. 330, 336 (1976)). Over a century ago, the Michigan Supreme Court remarked that

>   a mere promise to perform an act in the future is not, in a legal sense, a representation, and

---

[9]It should be noted that Paragraph 10, as presented by CAVA, does not appear in its First Amended Complaint.

> a failure to perform it does not change its character. Moreover, a representation that something will be done in the future, or a promise to do it, from its nature cannot be true or false at the time when it is made. The failure to make it good is merely a breach of contract, which must be enforced by an action on the contract, if at all.

*Cook.*, 972 F.Supp. at 410 (quoting *Macklem v. Fales*, 89 N.W. 581 (1902)); *see also Baker v. Arbor Drugs, Inc.*, 544 N.W.2d 727, 732 (Mich. Ct. App. 1996) ("An action for fraudulent misrepresentation must be predicated on a statement relating to a past or an existing fact. Future promises are contractual and cannot constitute actionable fraud.").

In *Cook*, the court held that the defendant, in referring to future actions that "would" occur, did not promise anything because he "[did] not refer to [a] past or present fact but, instead, only refer[red] to things which *might* happen in the future." *Id.* at 410-11 (emphasis added). Here, CAVA has alleged fraud misrepresentations by GE, through Imatron, about conduct in the future that "would" occur. Significantly, CAVA has not alleged any fraud misrepresentations which relate to "past or present facts." Accordingly, the Court must, and will, grant GE's motion to dismiss count IV of CAVA's First Amended Third Party Complaint.[10]

### III.

Federal Rules of Civil Procedure 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

---

[10] CAVA cites *Forman v. Forman* for the proposition that "an unfilled promise to perform in the future is actionable when there is evidence that it was made with a present undisclosed intent not to perform." 266 Mich.App.132, 143 (Mich. Ct. App. 2005). However, the Court is not satisfied that CAVA has proffered a sufficiency of evidence or any allegations which would suggest that these future promises were made by GE "with . . .[an] undisclosed intent not to perform." Rather, CAVA submits that its fraud claim should be allowed to remain in this litigation because GE has yet to perform these future promises, which allegedly is evidence of bad faith. However, if the Court permitted CAVA to proceed with its fraud claim on the theory that the absence of performance is an equivalent of bad faith under *Forman*, the rule in Michigan that prohibits actions for future promises would no longer have any meaningful purpose. Therefore, CAVA's argument must be rejected.

"Immaterial matters include requests for relief which are not available under the applicable law." *Helwig v. Kelsey-Hayes Co.*, 907 F.Supp. 253, 256 (E.D. Mich. 1995), *abrogated on other grounds in Hill v. Blue Shield of Mich.*, 299 F. Supp. 2d 742, 751 n.7 (E.D. Mich. 2003).

Initially, it should be noted that the Court need not address GE's request to strike paragraphs 77-78 of CAVA's First Amended Third Party Complaint because each of them are included within count IV, which has been dismissed by the Court pursuant Rule 12(b)(6). Hence, GE's request must be, and is, denied for mootness.

GE has also asked the Court to strike paragraphs 37-38 of CAVA's First Amended Third Party Complaint which read as follows:

> 37. After GE acquired Imatron, Dr. Bronn attended a symposium sponsored by GE in New Orleans on September 19-22, 2002, entitled "EBT International Symposium by GE Imatron.
>
> 38. At that symposium, GE executives repeated the aforementioned statements about working to obtain new Medicare reimbursement codes and promoting EBT technology to professional and industry groups.

CAVA's First Amended Third Party Complaint at 6.

In support of its position, CAVA argues that "because [it] continued to rely upon these post-lease misrepresentation to its detriment, the allegations go to the issue of continuing and consequential damages." CAVA's Resp. Br. at 7. Contrary to CAVA's contention, paragraphs 37 and 38 must be stricken from the First Amended Third Party Complaint because these assertions are immaterial to any of its facially sustainable claims. More specifically, these alleged misrepresentations occurred *after* CAVA had agreed to purchase and lease the EBT scanner. Therefore, these alleged misrepresentations cannot provide the basis for a fraud claim. *See Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 552-53 (Mich. 1999).

IV.

Accordingly and for the reasons that are stated above, the Court (1) grants GE's motion to dismiss counts III and IV, and (2) grants in part and denies in part GE's motion to strike paragraphs 37-38 and 77-78 and parts A, B( I), B(iii), B(iv), and B(v) of CAVA's First Amended Third-Party Complaint.

     IT IS SO ORDERED

Dated: April 12, 2006             s/ Julian Abele Cook, Jr.
      Detroit, Michigan            JULIAN ABELE COOK, JR.
                                United States District Court Judge

Certificate of Service

     I hereby certify that on April 12, 2006,  I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                                s/ Kay Alford
                                Courtroom Deputy Clerk